IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| OMARI THWAITES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | No. 5:11-CV-195 (CAR) |
| DERRICK WIMBUSH, DELTON | : | |
| RUSHIN, MICHAEL HEATH, | : | |
| CHRISTOPHER HALL, and | : | |
| DARREN DOUGLASS-GRIFFIN, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

### ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Omari Thwaites, a prior inmate at Macon State Prison, alleges that several prison guards violated his Eighth Amendment rights by using excessive force to extract him from a cell at Macon State Prison. Before the Court is a Motion for Summary Judgment [Doc. 40] filed by Defendants Derrick Wimbush, Delton Rushin, Michael Heath, Christopher Hall, and Darren Douglass-Griffin. Collectively, Defendants contend that there are no genuine issues of material fact and Thwaites's claims are deficient as a matter of law. For the reasons discussed below, Defendants' Motion for Summary Judgment [Doc. 40] is **GRANTED in part** and **DENIED in part**. Specifically, the Court **GRANTS** summary judgment as to Darren Douglass-Griffin and **DENIES** summary judgment as to Derrick Wimbush, Delton Rushin, Michael

Heath, and Christopher Hall.

## LEGAL STANDARD

Summary judgment is proper if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[2]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact.[3]

The Court must view the facts, and any reasonable inferences drawn from those facts, in the light most favorable to the party opposing the motion.[4]  "The inferences, however, must be supported by the record, and a genuine dispute of material fact requires more than 'some metaphysical doubt as to the material facts.'"[5]  In cases where opposing parties tell different versions of the same events, and one is "blatantly

---

[1] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986 ).
[2] *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).
[3] *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.*, 477 U.S. at 324-26.
[4] *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010); *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).
[5] *Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) (quoting *Penley*, 605 F.3d at 848).

2

contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts."[6] A disputed fact will preclude summary judgment only "if the dispute might affect the outcome of the suit under the governing law."[7] "The court many not resolve any material factual dispute, but must deny the motion and proceed to trial if it finds that such an issue exists."[8]

## BACKGROUND

For purposes of this Motion, the facts taken in the light most favorable to Thwaites, the non-movant, are as follows:

At the time of the events giving rise to the instant action, Thwaites was serving a ten year sentence for armed robbery while in the custody of Macon State Prison.[9] Beginning in May of 2010, Thwaites was housed in the Administrative Segregation Unit at Macon State Prison as discipline for fighting with another inmate.[10] On July 1, 2010, Don Blakely, a Macon State Prison unit manager, directed Sergeant Christopher Hall to move Thwaites from his single-occupancy cell J-1-222 to a double-occupancy cell in block J-2, all within the Administrative Segregation Unit.[11] Officers Derrick

---

[6] *Pourmoghani-Esfahani v. Gee*, 625 F.2d 1313, 1315 (11th Cir. 2010) (per curiam) (quoting *Scott v. Harris*, 550 U.S. 372, 380) (2007)).
[7] *Id*. (internal quotation marks omitted).
[8] *Envtl. Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981). In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.
[9] Thwaites Dep. 29:18-25 [Doc. 40-2].
[10] *Id*. at 40:15-22; 56:1-5.
[11] Hall Dep. 8:3-11 [Doc. 48]; Blakely Dep. 8:2-11 [Doc. 56]. Thwaites contends that Blakely did not, in fact, order Thwaites's move to a double-occupancy cell, and Defendants entered Thwaites's cell with the sole intent to harm him. However, this allegation is not supported by the record and is directly refuted by

Wimbush and Delton Rushin accompanied Sergeant Hall to Thwaites's cell.[12] When they arrived at J-1-222, Sergeant Hall ordered Thwaites to pack his belongings and prepare to move. Thwaites did not comply. Sergeant Hall then ordered Thwaites to back up to the flap in his cell door, to be handcuffed and removed from the cell. Thwaites silently refused.[13] Thwaites knew that failure to comply with Sergeant Hall's orders would subject him to the possibility of being forcibly removed from his cell, but, as Thwaites's states, "I was in fear of me complying and them taking me somewhere and beating me."[14]

Shortly thereafter, Blakely authorized Sergeant Hill to assemble a cell extraction team to remove Thwaites from his cell. This team included Officers Wimbush, Rushin, and Michael Heath. Officer Darren Douglass-Griffin and Sergeant Grace were assigned to film the extraction in accordance with Georgia Department of Corrections ("GDC") policy.[15] At some point immediately before the officers began recording, Sergeant Hall again ordered Thwaites to pack his property or "they were going to kick [his] ass."[16] Sergeant Hall warned Thwaites that "when we come in there, you know

---

Blakely's Deposition, which Thwaites does not address. Therefore, the Court cannot draw the "reasonable inference" that Defendants' were not instructed to move Thwaites. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Harris v. Ostrout*, 65 F.3d 912, 915 (11th Cir. 1995).

[12] Thwaites Dep. 141:2-6 [Doc. 40-2]; Wimbush Dep. 15:5-23 [Doc. 51]. There is some confusion in the record as to who exactly was present when Sergeant Hall initially requested Thwaites's cooperation. Viewing the facts in the light most favorable to Thwaites, the Court assumes all three officers were present.

[13] Thwaites Dep. 141:7-16 [Doc. 40-2]; Wimbush Decl. ¶ 4 [Doc. 40-6].

[14] Thwaites Dep. 64:22-23 [Doc. 40-2].

[15] Video of Extraction ("Video"), Disc 1 at 00:34, 04:08; Disc 2 at 00:41, 04:15 [Doc. 40-8].

[16] Thwaites Dep. 141:19-142:10 [Doc. 40-2].

4

what the fuck it is."[17]

Once Officer Douglass-Griffin and Sergeant Grace began recording, Sergeant Hall provided a standard introductory narrative of information, including Thwaites's name, his cell number, and a brief description of Thwaites's noncompliance.[18] Next, Sergeant Hall repeatedly directed Thwaites to put his hands outside the door flap to be handcuffed.[19] Thwaites silently refused each request, and instead removed the mattress from his bed and positioned it between his body and the door, attempting to brace for the incoming rush of officers and the initial impact with the team's riot shield.[20] The mattress obscured part of Thwaites's body from the officers' view.[21]

In a matter of seconds, Sergeant Hall opened Thwaites's cell door and the officers quickly entered in single file with Officer Wimbush at the front of the line with the shield, followed by Rushin, Heath, and two additional officers.[22] Officer Wimbush immediately struck Thwaites's torso with the shield, and Thwaites instantly fell to the ground on his stomach. Thwaites admits that this initial shield strike did not cause him any injuries.[23]

Once on the ground, Thwaites remained in place and compliant; he did not refuse to be handcuffed or otherwise hold his arms to prevent the officers from

---

[17] *Id.* at 142: 21-22.
[18] Video, Disc 1 at 00:15-00:35, Disc 2 at 00:21-00:41 [Doc. 40-8].
[19] *Id.* Disc 1 at 00:45-01:16, Disc 2 at 0050-1:25.
[20] Thwaites Dep. 66:8-22; Video, Disc 1 at 00:05-00:14.
[21] Wimbush Decl. ¶ 6 [Doc. 40-6].
[22] Video, Disc 1 at 01:20-01:30; Disc 2 at 01:33-01:38 [Doc. 40-8].
[23] Thwaites Dep. 65:17-66:4 [Doc. 40-2].

5

handcuffing him.[24]  Rather than immediately cuffing him, Thwaites claims multiple officers "jumped on top of me, punching me, kicking me in the head, punching me in the face" and midsection while the officers "kept saying, stop resisting, stop resisting, while they was [sic] beating me."[25]  Neither Sergeant Hall nor Officer Douglass-Griffin touched Thwaites or otherwise intervened.[26]  Finally, one of the officers "grabbed my leg, twisted it and slammed it on the floor."[27]  The entire use of force incident—between the extraction team's entry and the moment Thwaites was placed in handcuffs—lasted approximately sixty (60) seconds.[28]

After one of the officers handcuffed Thwaites, they lifted him to his feet and immediately escorted him to the medical department.  After limping down a flight of stairs and a short distance across a common room, Thwaites was seated on a table where he waited for a nurse to examine him.[29]  The nurse's "Use of Force Assessment" notes Thwaites's complaints about pain in his face, and it further describes bruising on the right side of Thwaites's face next to his nose with swelling of the upper lip on the left side.[30]  Thwaites also reported pain in his right leg; the report notes that there was "visually no obvious injury/deformity."[31]  The nurse also recorded visual bruising on

---

[24] *Id*. at 72:11-23.
[25] *Id.* at 65:11-14.
[26] Video, Disc 1 at 01:27-02:27; Disc 2 at 01:34-02:34 [Doc. 40-8].
[27] Thwaites Dep. at 65:14-16 [Doc. 40-2].
[28] Video, Disc 1 at 01:27-02:27; Disc 2 at 01:34-02:34 [Doc. 40-8]; Thwaites Dep. 76:25-77:5 [Doc. 40-2].
[29] Video, Disc 1 at 02:44-04:04; Disc 2 at 2:48-4:10 [Doc. 40-8].
[30] Use of Force Assessment, Defs. Ex. 5 at 12 [Doc. 40-3].
[31] *Id.*

6

Thwaites's right upper arm.[32]  Once this standard examination was complete, the officers escorted Thwaites to the shower holding area before returning him to his single-occupancy cell in J-1.  Because Thwaites was placed in the same cell to accommodate his injuries, Blakely did not update Thwaites's recorded movement history.[33]

Dr. Baggett, Thwaites's treating orthopedic doctor, later diagnosed Thwaites with a non-displaced fracture of his right tibia, which completely healed after approximately two months in a leg cast.[34]  No surgery or manipulation of the fracture was required.[35]  The other bone in Thwaites's lower leg, the fibula, was not fractured.[36]

## DISCUSSION

Through this action, brought pursuant to 42 U.S.C. § 1983, Thwaites alleges that Officers Wimbush, Rushin, and Heath violated his Eighth Amendment right to be free from "cruel and unusual punishments" by using malicious and sadistic force to extract him from cell J-1-222.[37]  Moreover, Thwaites claims that Sergeant Hall and Officer Douglass-Griffin are liable for their failure to intervene or otherwise protect him during the officers' assault.  After reviewing the record and the parties' briefs, the Court concludes that the evidence in this case presents genuine issues of material fact

---

[32] *Id*. at 15.
[33] Blakely Dep. 18:5-7, 21:8-24, 30:12-25, 31:1-2 [Doc. 56]; Hall Dep. 7:9-12, 9:9-13, 20-22, 18:12-16 [Doc. 48].
[34] Baggett Decl. ¶¶ 11, 13 [Doc. 40-9].
[35] *Id*. at ¶ 12.
[36] *Id*. at ¶ 11.
[37] *See* U.S. Const. amend. VIII.

that preclude summary judgment in favor of all Defendants except Officer Douglass-Griffin.

To establish an Eighth Amendment violation, a prisoner must demonstrate that officers applied force "maliciously and sadistically for the very purpose of causing harm."[38] When evaluating such excessive force claims, courts may consider several factors, including (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them; (4) the extent of any resulting injury; and (5) any efforts made to temper the severity of a forceful response.[39] Ultimately, however, "the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline."[40] Thus, "[t]he absence of 'serious injury' alone is insufficient to dismiss a prisoner's Eight Amendment claim."[41] Consequently, the type of punishment, rather than some arbitrary quantity of injury, is what is relevant to maintaining an Eighth Amendment claim.[42]

## I.   Excessive Force—Officers Wimbush, Rushin, and Heath

Assuming *arguendo* that Defendants' initial entry and shield strike were

---

[38] *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986); *Skritch v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2992) (extending the same Eighth Amendment standard to cell extractions).
[39] *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (quoting *Whitley*, 475 U.S. at 321).
[40] *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).
[41] *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996)
[42] *Id*.

necessary to restore order and gain Thwaites's compliance, Thwaites's claim that Defendants continued to assault him after he ceased resisting compels the Court to deny summary judgment. In opposition, Defendants contend that the cell extraction videos and medical testimony contradict Thwaites's allegations that Defendants maliciously inflicted an unwarranted beating that culminated in Thwaites's fractured tibia. Instead, Defendants allege that this uncontested evidence demonstrates they used minimum force to restrain Thwaites as he continued to resist Defendants' attempts to place him in handcuffs. The Court disagrees. Although a plaintiff's version of events can be blatantly contradicted by video recordings or other overwhelming physical evidence and testimony, the evidence in this particular case does not present such a clear-cut conclusion and is best left to the jury's discretion.[43]

First, Thwaites's version of events is not blatantly contradicted by the cell extraction video. "In the context of cases involving video evidence, this Court will accept the video's depiction over the opposing party's account of the facts where the video obviously contradicts the facts" such that no reasonably jury could believe them.[44] However, "even where the entire series of events is recorded, video evidence is not obviously contradictory if it fails to … provide an unobstructed view of events,"

---

[43] *See Scott*, 550 U.S. at 380 (summary judgment appropriate where video evidence "utterly discredited" the plaintiff's version of events); *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1249-50 (11th Cir. 2004).
[44] *Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011).

even if the action is only periodically obstructed.[45]  Such is the instant case.  Although both videos record the entire cell extraction—from Sergeant Hall's introduction to Thwaites's placement in the shower area after receiving medical attention—much of the critical, physical exchange between Defendants and Thwaites is obscured by the veritable dog pile of Defendants and by Sergeant Hall's occasional, yet brief, movements in front of the two cameras.

With so many officers crammed in a small cell, much of the "action" consists of Defendants' backs and shuffling motions around Thwaites.  Their hands and feet are often concealed in the sheer mass of bodies or otherwise outside the cameras' angles of view.  Thus, the Court cannot conclude that these videos "obviously contradict" Thwaites's allegations that Defendants did, in fact, punch, kick, and stomp him.[46]  Likewise, the Court cannot adopt Defendants' assertion that Thwaites physically resisted Defendants' efforts to restrain him.  Thwaites himself is not visible until the entire struggle has ceased and he is lifted from the pile, handcuffed.  As such, the Court must adopt Thwaites's version of the incident for purposes of summary judgment.

The medical evidence proves a closer argument, but, again, it is not so clearly contradictory that the Court may discredit Thwaites's version of the incident. The extent of Thwaites's injury "is a relevant factor in determining whether the use of force

---

[45] *Id.*; *Pourmoghani-Esfahani*, 625 F.3d at 1315.
[46] *See Logan*, 439 F. App'x at 800.

could plausibly have been though necessary under the circumstances and may be an indication of the force applied."[47]  However, the Court is mindful that the key inquiry is the amount of force applied, not the severity of the resulting injury.  "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."[48]

In this case, the medical testimony is inconclusive.  Dr. Baggett, Thwaites's orthopedic doctor, states that Thwaites's injury indicates a "lower level of trauma" that "was not caused by a high level of force" such as "intentional twisting, slamming, kicking or stomping."[49]  Instead, Dr. Baggett suggests that "the fracture likely occurred from a weight being placed on [Thwaites's] leg while his foot was externally rotated. This could have happened while he was being controlled, while someone was kneeling on him trying to handcuff him."[50]  This opinion corroborates Defendants' contentions that they did not intentionally fracture Thwaites's tibia.

However, even assuming the jury accepts Dr. Baggett's expert opinion regarding Thwaites's fractured tibia, Defendants have not accounted for his other injuries.[51]  The nurse's initial "Use of Force Assessment," which was conducted immediately after the cell extraction, also notes bruising on the right side of Thwaites's

---

[47] *Id.* at 800.
[48] *Wilkins v. Gaddy*, 559 U.S. 34, 130 S.Ct. 1175, 1178-79 (2010) (per curiam).
[49] Baggett Decl. ¶¶ 15-16 [Doc. 40-9].
[50] *Id.* at ¶ 17.
[51] *See Maiz v. Virani*, 253 F.3d 641 (approving court's jury instruction which properly noted that the jury must ultimately decide whether to accept an expert's opinion).

11

face next to his nose with swelling of the upper lip on the left side. The Assessment also records visual bruising on Thwaites's right upper arm. Taken in the light most favorable to the non-movant, a reasonable juror could believe that Thwaites was subjected to unnecessary violence but had "the good fortune to escape without serious injury."[52] Thus, the medical evidence in this case raises questions about the credibility of Thwaites's testimony and the amount of force Defendants employed, but it is not sufficient to negate Thwaites's testimony and warrant summary judgment for Defendants.

Ultimately, this case presents "two competing, contradictory stories of what happened."[53] This Court cannot weigh the witnesses' credibility to choose one account over the other.[54] Rather, the Court must view the contested facts in the light most favorable to the non-movant. In Thwaites's version of the facts, Defendants continued to beat Thwaites, who was nonresistant and complaint while face down on the floor, as punishment for Thwaites's repeated refusal to comply with Defendants' orders.[55] The Eleventh Circuit has explicitly and consistently reiterated that "government officials may not use gratuitous force against a prisoner who has been already

---

[52] *See Wilkins*, 130 S.Ct. at 1179; *Hall v. Bennett*, 447 F. App'x 921, 923-24 (11th Cir. 2011) (finding that the absence of <u>any</u> physical injuries did not negate plaintiff's excessive force claim).
[53] *See Hall*, 447 F. App'x at 924.
[54] *Id*.
[55] The Court declines to address other, more nefarious motivations in the present Order. If Thwaites's seeks to introduce evidence of other, similar transactions at trial pursuant to Federal Rule of Evidence 404(b), the Court will consider the "Dean incident" and any other occurrences at that time.

subdued or … incapacitated."[56]  Accordingly, a reasonable jury, accepting Thwaites's version of facts as true, could determine that the use of force he describes was wholly unnecessary, out of proportion to any perceived danger or need to restore discipline, and imposed solely for the purpose of inflicting pain in a sadistic and malicious fashion.

Given the genuine issues of material fact regarding the nature and severity of the force used against Thwaites, the Court denies summary judgment as to Officers Wimbush, Rushin, and Heath.

## II.     Failure to Protect—Sergeant Hall and Officer Douglass-Griffin

Thwaites also alleges that Sergeant Hall and Officer Douglass-Griffin are liable for their failure to protect him from the other officers' excessive force during the cell extraction.  Corrections officers, whether supervisory or not, who witness unconstitutional uses of excessive force and fail to take reasonable steps to protect victims of other officers' brutality can be held personally liable for their nonfeasance under the Eighth Amendment.[57]  To establish liability, Thwaites must provide sufficient evidence for a jury to find both (1) that the officers in question were actually present; and (2) that they had an actual opportunity to intervene or otherwise take

---

[56] *Skritch*, 280 F.3d at 1303 (citing *Chapman*, 97 F.3d at 505-06; *Davis v. Locke*, 936 F.2d 1208, 1212-13 (11th Cir. 1991); *Williams v. Cash-C.O.I.*, 836 F.2d 1318, 1320 (1988); *Perry v. Thompson*, 786 F.2d 1093 (11th Cir. 1986)).
[57] *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341-42 (11th Cir. 2007); *Skritch*, 280 F.3d at 1301; *see Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1993).

reasonable steps to protect Thwaites but failed or refused to do so.[58] There is no dispute that Sergeant Hall and Officer Douglass-Griffin were present during the cell extraction. However, Defendants contend they cannot be held liable as bystanders because they did not have an opportunity to intervene. Specifically, Defendants cite (1) the brief duration of the incident; (2) Officer Douglass-Griffin's status as a subordinate officer; (3) Officer Douglass-Griffin's and Sergeant Hall's preoccupation with other, necessary duties during the incident; and (4) Defendants' inability to view any excessive force used against Thwaites. Again, viewing the evidence in the light most favorable to Thwaites, a reasonable jury could conclude that Sergeant Hall should have taken <u>some</u> action to protect Thwaites from the other officers' aggression. In contrast, Thwaites has not provided sufficient evidence for a reasonably jury to conclude that Officer Douglass-Griffin had any knowledge of the alleged excessive force. The Court addresses each of Defendants' arguments in turn.

First, the brevity of Defendants' use of force did not automatically deprive Officer Douglass-Griffin and Sergeant Hall of an opportunity to intervene. "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by [another] officer is generally an issue for the trier of fact unless, considering

---

[58] *Hadley v. Gutierrez*, 526 F.2d 1324, 1331 (11th Cir. 2008); *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000).

all the evidence, a reasonable jury could not possibly conclude otherwise."[59]  In this case, neither the span of time nor the number of blows would preclude a jury from finding in favor of Thwaites as a matter of law.  A one minute altercation, though brief, may give an officer ample opportunity to intervene.[60]  This is not a case where one or two blows were rendered in such quick succession the officers had no means of anticipating or preventing harm to the victim.[61]  Rather, Thwaites claims that Defendants punched, kicked, and stomped on him "repetitiously" over the course of the cell extraction.[62]

Second, Officer Douglass-Griffin's inferior rank did not relieve him of his duty to protect Thwaites from the officers' malicious actions.  All officers "<u>whether supervisory or not</u>," have a duty to intervene "when a constitutional violation such as an unprovoked beating takes place in his presence."[63]  "The duty to uphold the law does not turn upon an officer's rank.  It is neither affected by, nor proportional to, a non-intervening officer's relationship to an offending colleague."[64]

Third, Defendants' respective duties did not deprive either one of them of the

---

[59] *Lanigan v. Village of E. Hazel Crest*, 110 F.3d 467, 478 (7th Cir. 1997); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).
[60] *See, e.g.*, *Raulerson v. Alred*, No. 1:08-cv-00222-MP-GRJ, 2010 WL 6872175, at *9 (N.D. Fla. Nov. 18, 2010) (attack lasting one minute); *Jackson v. Austin*, 241 F. Supp. 2d 1313, 1322 (D. Kan. 2003) (same).
[61] *Compare with Gutierrez*, 526 F.3d at 1330-31 (granting summary judgment where defendant police officer could not have "anticipated and then stopped" another officer's single punch); *Robertson v. Bryant*, No. 4:06-CV-10-RLV, 2007 WL 142853, at *5 (N.D. Ga. Jan. 16, 2007) (finding no opportunity to intervene where plaintiff testified that he was punched in quick succession not more than two times).
[62] Thwaites Dep. 68:1-18; 70:8-14; 94:2-15 [Doc. 40-2].
[63] *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998) (emphasis added).
[64] *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002).

15

ability to intervene. If any single officer had a duty to protect Thwaites, it was certainly Sergeant Hall, who was in charge of the extraction and could freely move about the cell during the entire incident. Similarly, Officer Douglass-Griffin's obligations as camera operator did not prevent him from doing <u>something</u> to prevent Thwaites' injury if he could see his co-officers' actions.[65] Eleventh Circuit precedent "suggests that the duty to intervene in cases of excessive force is not merely a physical one."[66] Rather, officers who are otherwise occupied yet "in voice contact" with fellow officers must at least order them to stop their assault.[67] For example, in *Bailey v. City of Miami Beach*,[68] the Eleventh Circuit concluded that a law enforcement officer's duty to control his dog may have prevented him from physically assisting the victim, but it did not diminish his duty to speak against a fellow officer's attack.[69] Like the officer in *Bailey*, Officer Douglass-Griffin's obligation to document the cell extraction may have prevented him from physically intervening; however, this obligation did not relieve him of his duty to speak against unconstitutional violence.

Fourth, and finally, Defendants contend that they could not intervene because they had no knowledge of the excessive force used against Thwaites. Although the

---

[65] Specifically, GDC policies direct officers to film an entire use of force incident without stopping the camera or pointing it away from the inmate. Officers should "[t]ry to obtain a continuous stream of action. If the camera gets jostled, continue filming and quickly point it back on the inmate." Douglass-Griffin Aff. ¶¶ 10-11 [Doc. 40-7].
[66] *Bailey v. City of Miami Beach*, No. 10-20998-CIV, 2011 WL 3703282, at *7 (S.D. Fla. Aug. 23, 2011), *affirmed by* 476 F. App'x 193 (11th Cir. 2012).
[67] *See, e.g.*, *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 925 (11th Cir. 2000).
[68] 476 F. App'x 193 (11th Cir. 2012).
[69] *Id.* at 196-97.

Court agrees that Officer Douglass-Griffin, a camera operator, could not see, and therefore did not know, any excessive force was employed, Sergeant Hall's knowledge presents a question of fact best resolved by a jury. As a preliminary matter, the Court finds that Sergeant Hall's statements before the cell extraction, though brusque, do not establish Defendants' knowledge or endorsement of their fellow officers' use of excessive force. This is not a case where an officer, while watching others inflict malicious and sadistic force, encouraged them to continue.[70] Instead, Sergeant Hall's cursory statements simply illustrate a type of "routine discomfort[, which] is part of the penalty that criminal offenders pay for their offenses against society."[71] Accordingly, Thwaites's failure to protect claims turn on Sergeant Hall's and Officer Douglass-Griffin's respective abilities to observe the other officers' actions as the cell extraction unfolded.

As to Officer Douglass-Griffin, the parties do not dispute that his only role in the use of force was operating one of the video cameras. The view depicted on the video demonstrates that Officer Douglass-Griffin's view of the events actually occurring in the cell was inhibited by his stationary physical position, as well as the positions of the officers in the cell, who were essentially huddled over Thwaites. Viewing the evidence in the light most favorable to Thwaites, no reasonable jury could

---

[70] *Compare Bozeman v. Orum*, 422 F.3d 1265, 1271-72 (11th Cir. 2005) (Officer's statement that "we don't think you've had enough" while continuing to press inmate's head into a mattress constituted evidence of excessive force).
[71] *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)) (internal quotation marks omitted).

17

conclude that Officer Douglass-Griffin was aware that excessive force was being used, or that he was in a position to intervene. Therefore, Officer Douglass-Griffin is entitled to summary judgment in his favor.[72]

Sergeant Hall's case proves a closer question. The two videos of the incident depict him moving around Thwaites's cell, occasionally approaching the mass of officers to retrieve the riot shield and more closely observe the officers' progress. Given Sergeant Hall's distinct angle of vision, the Court cannot, as a matter of law, determine that his view of the excessive force was wholly obscured. At the very least, these circumstances create a genuine issue of material fact regarding Sergeant Hall's ability to intervene, which should be resolved by a jury. Thus, the Court denies summary judgment as to Sergeant Hall.[73]

## CONCLUSION

Viewing the evidence in the light most favorable to Thwaites, the non-movant, genuine disputes of material fact exist which preclude summary judgment on Thwaites's Eight Amendment claims. Therefore, Defendants' Motion for Summary Judgment [Doc. 40] is **GRANTED in part** and **DENIED in part**. The Court **GRANTS** summary judgment as to Darren Douglass-Griffin and **DENIES** summary judgment as to Derrick Wimbush, Delton Rushin, Michael Heath, and Christopher Hall.

---

[72] *See also Souter v. Edelen*, No. 3:10cv65/MCR/EMT, 2011 WL 7162886, at *10 (N.D. Fla. Nov. 7, 2011).
[73] As part of this conclusion, the Court also notes that Defendants offer little, if any, analysis with respect to Sergeant Hall's ability to intervene. In fact, it comprises little more than a paragraph.

**SO ORDERED,** this 29th day of March, 2013.

S/ C. Ashley Royal
C. ASHLEY ROYAL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

BBP/lmh